UNITED STATES, Appellee,

v.

James G. RYAN, Private, U. S. Army, Appellant.

No. 30,971.

CM 432098.

U. S. Court of Military Appeals.

May 15, 1978.

*Captain Jay Sacks Cohen* argued the cause for Appellant, Accused. With him on the brief were *Colonel Alton H. Harvey, Lieutenant Colonel James Kucera, Captain*

*Robert D. Jones, Captain Robert H. Herring, Jr.,* and *Captain John R. Osgood.*

*Captain John F. DePue* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Donald W. Hansen* and *Major John T. Sherwood, Jr.*

## Opinion of the Court

PERRY, Judge:

On June 26, 1974, the appellant was convicted by a general court-martial of wrongful distribution and possession of lysergic acid diethylamide (LSD) and wrongful possession of marijuana, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. He was sentenced to a dishonorable discharge, confinement at hard labor for 16 months, and forfeiture of all pay and allowances. While the convening authority approved the findings, he reduced the sentence to a bad-conduct discharge, confinement at hard labor for 9 months, and forfeiture of all pay and allowances. The United States Army Court of Military Review affirmed the findings and sentence as approved. This Court granted review to consider three assigned or specified issues. Because we believe the appellant's challenge to the jurisdiction of the court-martial which convicted him has merit, we need not discuss the remaining assignments of error.[1]

The charges against the appellant initially were referred to trial by general court-martial via Court-Martial Convening Order Number 62, dated May 7, 1974. The court-martial personnel detailed in that order included a military judge, 10 officer members, a trial counsel, and a defense counsel. Subsequently, the appellant requested a trial by a court including enlisted membership. The case thereupon was withdrawn from this court and thereafter was referred to trial via Court-Martial Convening Order Number

73, dated June 3, 1974. The personnel of this court consisted of the same military judge, 6 of the officer members detailed to the first court, 5 enlisted members, and the same trial and defense counsel. For reasons to be revealed hereafter, the case again was withdrawn and was rereferred to trial by a general court-martial convened by Court-Martial Convening Order Number 85, dated June 7, 1974, which order detailed as personnel the same military judge, 5 different officer members, 5 different enlisted members and the same trial and defense counsel. It was this last order (Convening Order Number 85) which convened the court which ultimately convicted the appellant. Each of these orders was signed by CW2 Byron L. Bailey, the Acting Assistant Adjutant General, purportedly by Command of Major General Ott, the general court-martial convening authority.

Because the appellant's counsel questioned an aspect of this procedure, the Government called as a witness Mr. Bailey, who had signed all three orders. His testimony is enlightening on the procedure generally utilized in that command for selecting and detailing court-martial personnel, as well as that employed in selecting the particular court-martial which is to try any given case, such as the appellant's.

Mr. Bailey testified that one of his duties as administrative officer is to be an acting Assistant Adjutant General and, in that capacity, to "refer cases to court-martial." Mr. Bailey revealed that it was he who was responsible for referral of cases to court-martial, noting that he "assign[ed] different cases to different courts." Expounding upon the procedure he normally utilized in referring cases to courts, Mr. Bailey stated:

> We have two panels of jurors. The names are selected by the Adjutant General and forwarded through this office to the Commanding General where he makes his selection of court members.

---

1. The other assignments of error which we granted for review address whether the offenses ought to have been considered as multiplicious for sentencing purposes and whether the appellant had been denied due process and equal protection of the law by having been

tried under Article 134 for these drug offenses, rather than under Article 92. As to this latter concern, *see United States v. Jackson,* 3 M.J. 101 (C.M.A.1977), and *United States v. Courtney,* 1 M.J. 438 (C.M.A.1976).

Those names are then given to me broken down into two panels of jurors and orders are published with different combinations of trial and defense counsel assigned to each jury. When a case is directed to be tried by general court-martial by the CG, the case complete with the advice is brought to me and we determine from the Chief of Military Justice what trial and defense counsel will try a particular case. We then, in alternating order, refer the cases to the jury or to the court-martial on the particular order.

The above references to panels of jurors apparently mean officer jurors, for later, when asked about the procedure used when an accused requests enlisted membership on a court, Mr. Bailey responded:

We keep a list of enlisted men. When the general picks the jurors he picks officers and enlisted men. We usually don't have many enlisted men on the list. Colonel Rogers was the senior member of one court and when his court was asked for enlisted men, we would go to our list and just pick out some enlisted men. It's possible that they could have been sitting on either court.

Mr. Bailey indicated that these were the procedures followed in the appellant's case. He confirmed that the reason for the withdrawal of the case from the court convened by Court-Martial Convening Order Number 62 and the rereferral to the one detailed in Court-Martial Convening Order Number 73 was that the appellant, after the initial referral, had requested that the court-martial which tried him include enlisted members.[2] When queried about the change from the court created by Court-Martial Convening Order Number 73 to the one convened by Court-Martial Convening Order Number 85, Mr. Bailey stated that the normal 90-day term of court for the former court was ending. He said that, in fact, he had the new list of jurors from the convening authority at the very moment "[w]hen the clerk referred it [the appellant's case] to the old court." He disclosed that when he "found that she had referred it" to the old court, he "instructed her to rerefer it to the new court" because, in his opinion, it would "unduly harass" the jurors on the old court to expect them to try the appellant's case. He acknowledged that he consulted with no one when he made the decision to rerefer the appellant's case to the court convened by Court-Martial Convening Order Number 85, claiming that it was not necessary for him to contact anyone when he rereferred a case from one court to another.

 Mr. Bailey's testimony reveals that the convening authority selects both officer and enlisted personnel as jurors; that somebody—we shall presume the convening authority [3]—divides the officers into

---

**2.** As earlier noted, the court detailed in Court-Martial Convening Order Number 73 was comprised of the same military judge, the same trial and defense counsel, and 6 of the same 10 officers as appeared on Court-Martial Convening Order Number 62. The only change in the later court, besides the deletion of the other 4 officers, was the addition of 5 enlisted members.

**3.** It is not clear from this record who, in the procedure followed at this installation, actually divides the list of officers selectees into two court panels, but if it was not the convening authority personally, all that this Court says in this opinion, supra, regarding the necessity that the convening authority personally determine the composition of a court-martial applies to this step in the process as well.

Further, it is not clear who actually details the military judge in a given order, but if it was other than the convening authority, a jurisdic-tional flaw exists. *United States v. Newcomb*, Docket No. 31,188, 5 M.J. 4 (C.M.A.1978).

It *is* clear who details the counsel—*i.e.*, the combined efforts of Mr. Bailey and the Chief of Military Justice. This is error. *United States v. Newcomb, supra; Wright v. United States*, 2 M.J. 9 (C.M.A.1976).

It may be inferred from what is said that Mr. Bailey is the one who decides which officers to retain and which officers to excuse when drafting a new order for the purpose of adding enlisted men to the court pursuant to the appellant's request therefor, as some, but not all, of the officer members appearing in Court-Martial Convening Order Number 62 appear in that capacity in Court-Martial Convening Order Number 73, and Mr. Bailey's testimony makes it quite clear that all this was done in his office. *See United States v. Allen*, 5 U.S.C.M.A. 626, 18 C.M.R. 250 (1955), regarding delegation of the convening authority's power to excuse court members from service in a given trial.

two panels of members, thereby creating two separate juries; that all the enlisted selectees, however, remain on a separate list; and that whenever an accused requests enlisted membership on one or the other of the officer courts to which his case has been referred, Mr. Bailey and his associates go to that list "and just pick out some enlisted men." Indeed, as Mr. Bailey acknowledged, it is possible that any given enlisted selectee might be sitting as a member on *either* panel of officers. Thus, whenever an accused, like the appellant, requests enlisted personnel on the jury, the precise membership of the court is determined *not* by the *convening authority*, but by *subordinate administrative personnel* through the addition to the court panel selected and convened by the convening authority, of enlisted members of *their* choosing from the master list.

Mr. Bailey's testimony indicates that the convening authority did not consciously cause the appellant's case to be withdrawn from the courts convened either under orders 62 or 73. Paragraph 56a, Manual for Courts-Martial, United States, 1969 (Revised edition), advises that only the convening authority may effect the withdrawal of a case from a court to which he referred it. *See United States v. Hardy,* 4 M.J. 20 (C.M.A.1977).

In *United States v. Allen,* 5 U.S.C.M.A. 626, 18 C.M.R. 250 (1955), this Court was presented a record which implied a situation in the reverse of the one involved here. There, the convening authority, while personally selecting the court membership in the form of a large panel, apparently delegated to subordinate administrative personnel the authority to excuse many of those members without regard to factual availability, in what Judge Brosman called an "irregular scheme" involving "wholesale absences." *Id.* at 638, 18 C.M.R. at 262. Judge Brosman went on to record his opinion that if in fact the convening authority had delegated this function, then "it is genuinely doubtful that his action would have accorded fully with the Congressional intendment that *a convening authority must choose the basic composition of courts-martial assembled under his aegis."* *Id.* at 639, 18 C.M.R. at 263 (emphasis added). Chief Judge Quinn, concurring in the result with Judge Brosman, likened the power to excuse to the power to select and found that, as both had the effect of controlling the membership of the court, the convening authority *personally* must exercise this authority under Article 29 of the UCMJ. Even Judge Latimer, in dissent, recognized that the convening authority cannot delegate the power to select the membership of a court-martial; he simply disagreed with his brothers as to whether this maxim extended to the power to excuse. Thus, a unanimous Court in *Allen* was of the view that the convening authority *himself* must select the composition of any court-martial appointed by his authority.

█ It consistently has been construed that a designated convening authority's power to appoint a court-martial is one accompanying the position of command and may not be delegated [4] (with the express

---

Finally, it is clear that Mr. Bailey, or his clerk, actually decides not only the withdrawals, and rereferrals, but also the initial referrals. In *United States v. Simpson,* 16 U.S.C.M.A. 137, 36 C.M.R. 293 (1966), this Court held that once the convening authority personally details personnel to (and thereby creates) several courts-martial which are to operate simultaneously on the same level, and once he personally decides that a case will be tried and that it will be tried at that level, it was error (nonjurisdictional) for the convening authority to have delegated the duty of marrying up a specific case to a specific court. The Government herein urges us to reexamine this ruling, but we decline to do so in light of the presence in this case of independent jurisdictional error.

4. Paragraph 5a (5), Manual, *supra* observes:
[A]nyone having this authority [to convene general courts-martial] cannot delegate or transfer it to another.
Identical language appears in paragraph 5a (5), Manual for Courts-Martial, United States, 1951, and similar language of the same substance is found in paragraph 5, Manual for Courts-Martial, U.S. Army, 1949; in paragraph 5a, Manual for Courts-Martial, U.S. Army, 1928; and in paragraph 18, Manual for Courts-Martial, U.S. Army, 1917. Also, paragraph 12–2, Army Regulation 27–10, C3, Aug. 1, 1969, states: "As soon as practicable after the convening authority has *personally determined the composition* of a court-martial, he will issue convening orders for each general, special, and summary

Congressional exception of Article 140, authorizing the President of the United States to delegate any of his powers or responsibilities under the Code, one of which is convening a general court-martial under Article 22(a)(1), UCMJ). *See United States v. Cunningham,* 21 U.S.C.M.A. 144, 44 C.M.R. 198 (1971). As court members are, unless properly waived, an indispensable jurisdictional element of a general court-martial, *see United States v. Singleton,* 21 U.S.C.M.A. 432, 45 C.M.R. 206 (1972); *Wright v. United States,* 2 M.J. 9 (C.M.A.1976), if the convening authority cannot delegate the power to appoint a court-martial, then the convening authority cannot delegate the power to appoint, or detail the court members, for the members, together with the judge, *are* the court-martial.

■ Hence the failure of the convening authority to have determined personally the composition of the court in the order under which the appellant was tried is error.

Remaining for discussion is a consideration of the legal effect of this error of omission. The Government suggests that the appellant was not prejudiced by the procedure followed, since he ultimately elected to be tried by military judge alone. Article 16(1)(B), UCMJ, 10 U.S.C. § 816(1)(B). But we believe the proper inquiry is whether the jurisdiction of the court survived the defect in the appointment of the members so as to have permitted the judge to proceed alone. We think not.

■ A court-martial is a creature of an order promulgated by an authorized commander (*see* Article 22(a), UCMJ; 10 U.S.C. § 822(a)) which convenes, or creates, the court-martial entity. Without such an order, there is no court. If follows that if there is a fundamental defect in that order, the very document itself is negated and no court exists.

Article 16 of the Code provides that a general court-martial may consist, alternatively, of a military judge and not less than five members (Article 16(1)(A)), *or* of a military judge alone (Article 16(1)(B)), assuming certain specific procedural requisites are met. By the language of the statute itself, these types of general courts-martial are distinct and on equal footing, one with the other.

■ In the instant case, Court-Martial Convening Order Number 85, under which the appellant purportedly was tried, convened a court-martial consisting of a military judge and a list of members.[5] While the literal language of Article 16(1)(B) would appear to permit a convening order creating a court consisting only of a judge (which could proceed to try the accused only if the procedural necessities stipulated in the statute were met), the fact is that Order # 85 did not do so; rather, quite clearly, the court created by this order consisted of judge *and* jury, under Article 16(1)(A). As a fundamental defect existed in the order creating this court—specifically, as to the jury—there was no court at all. Accordingly, reversal is compelled.

court-martial." (Emphasis added). Paragraph 12–4c(1), AR 27–10, is even more specific: "The authority line in convening orders indicates that the commander has personally acted with respect to the selection of the personnel named in the order." *See also* Naval Courts and Boards, §§ 329, 330 (1937).

This theory of nondelegability of the convening authority's power to appoint courts-martial is well capsulized in the following comments in Winthrop's Military Law Precedents, 2d ed., 1920 Reprint at 67 (footnote omitted):

*Delegation of the authority.* As the Article expressly designates certain particular commanders as competent to order general

courts for armies, divisions and departments, it follows, upon the principle of *expressio unius exclusio alterius,* that no other commanders or officers shall be so authorized. A commander of a division, department or army cannot therefore delegate to an inferior commander or to a staff officer the authority vested in himself by this Article, or authorize such officer to exercise the same, *for him,* in his temporary absence or otherwise.

5. The order also listed the trial and defense counsel detailed to that court. This is of no import vis-a-vis the constitution of the court-martial as an entity, however, for counsel are not an integral part of the court. *Wright v. United States, supra.*

The decision of the United States Army Court of Military Review is reversed. The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. Another trial may be ordered.

JUDGE COOK CONCURS.

FLETCHER, Chief Judge (dissenting):

I dissent, consistent with the position taken in my minority opinion in *United States v. Newcomb*, Docket No. 31,188, 5 M.J. 4 (1978). In that case I indicated that the military jury selection process involves discretionary action by the convening authority insofar as selecting which service persons are "best qualified" to be members of courts-martial. I will not extend that acknowledged general obligation under Article 25(d)(2), Uniform Code of Military Justice, 10 U.S.C. § 825(d)(2), to include for the convening authority the particular responsibility to determine the precise membership of each court based on the peculiarities of each case or on the individual accused to be tried by court-martial.[1]

The issue assigned for review was whether the court-martial which tried the appellant had jurisdiction over him in view of the method used to select the members at his court-martial.[2] The failure to find jurisdiction in the present case is based on a purported fundamental defect in the court-martial order "which convenes or creates the court-martial entity."[3]

More particularly, the majority finds defective the procedure whereby the convening authority, after selecting the enlisted and officer members for court-martial duty, permitted subordinate administrative personnel to add these enlisted members to preselected officer panels when an accused requested enlisted membership.

In spite of the fact that these court-martial orders were signed at the direction of the convening authority, this process of panel assignment is viewed by the majority as an impermissible delegation of statutory power under Article 25(d)(2), *supra*. This conclusion rests on the implicit finding as a matter of law that the convening authority is required by the aforementioned code provision to personally arrange the precise membership of each accused's court-martial. Herein lies my disagreement with the majority, for I believe this statute simply establishes the responsibility of the convening authority to select those persons from the military community best qualified for general jury duty.[4]

Article 25(d)(2), *supra*, states:

When convening a court-martial, the convening authority shall detail as members thereof such members of the armed forces as, in his opinion, are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament.

My reading of the legislative history of this codal provision does not support its overly broad interpretation which would include in its purview the right of a military accused to have a court composed of members personally tailored to the accused's needs by the convening authority. Rather, the general legislative purpose of the provision appears to me to place the responsibility on the convening authority to personally provide the military accused with the most eligible prospective jury members. *Cf.* 28 U.S.C. § 1865 and A.B.A. Standards, Trial by Jury § 2.1 (1968). In this light, the addition of enlisted members already selected by the convening authority should be viewed as a mere ministerial function inherent in the administration of justice in any court system. *Cf.* 28 U.S.C. § 1866. Accordingly, I find no impermissible delega-

---

1. *See United States v. Crawford*, 15 U.S.C.M.A. 31, 58, 35 C.M.R. 3, 30 (1964), (Ferguson, J., dissenting).

2. Article 25(d)(2), Uniform Code of Military Justice, 10 U.S.C. § 825(d)(2).

3. *See McClaughry v. Deming*, 186 U.S. 49, 22 S.Ct. 786, 46 L.Ed. 1049 (1902); *Runkle v. United States*, 122 U.S. 543, 7 S.Ct. 1141, 30 L.Ed. 1167 (1887).

4. *See United States v. Crawford*, *supra* at 36, 35 C.M.R. at 6.

tion of authority under Article 25(d)(2), *supra,* in the present case.[5]

Moreover, *United States v. Allen,* 5 U.S. C.M.A. 626, 18 C.M.R. 250 (1955), an opinion relied on heavily by the majority, is not an appropriate case on which to base a purported right in the military accused to a court of members tailored by the convening authority to his particular court-martial: In that case, the question concerned the propriety of excusal by a staff judge advocate of members already listed on a court-martial order for a particular court-martial appropriately referred. In my opinion, Article 29, U.C.M.J., 10 U.S.C. § 829, in conjunction with Article 25(d)(2), *supra,* was the basis for the accused's right to a particular composition of the court at that period in the court-martial proceedings.

I believe Article 25(d)(2), *supra,* and all other appropriate codal prescriptions were complied with in the present case. It is uncontroverted in the record of trial that the convening authority selected all officers and enlisted personnel for duty as members in the appellant's court-martial. Moreover, there is no challenge to their qualifications to sit as members, or any claimed abuse by the convening authority in selecting them as qualified for general duty as members of court-martial.[6] Accordingly, I conclude that this convening authority has complied with the Congressional intendment that a convening authority must choose "the basic composition of courts-martial assembled under his aegis." *See United States v. Allen, supra* at 639, 18 C.M.R. at 263.

5. *See United States v. Kemp,* 13 U.S.C.M.A. 89, 32 C.M.R. 89 (1962); *United States v. Sax,* 19 C.M.R. 826, 837 (A.F.B.R., 1955), *pet. denied* 6 U.S.C.M.A. 822 (1955).

6. *United States v. Crawford, supra* at 47, 35 C.M.R. at 19 (Kilday, J., concurring in the result).